# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **ERICH DALE BATES,** ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | **4:20-cv-00440-CLM** |
| ) | |
| **ANDREW SAUL,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
|     **Defendant.** ) | |

## **MEMORANDUM OPINION**

Erich Dale Bates seeks disability, disability insurance benefits, and Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Bates's application in an opinion written by an Administrative Law Judge ("ALJ"). The Appeals Council then denied Bates's request for review.

Bates argues: (1) that the ALJ's finding that he would miss work only one day per month is not supported by substantial evidence, (2) that the ALJ's finding that Bates can perform his past work as a fast food worker is not supported by substantial evidence, (3) that the Appeals Council failed to adequately evaluate Bates's new evidence, and (4) that once the evidence submitted to the Appeals Council is considered, the SSA's denial of benefits is not supported by substantial evidence.

1

As detailed below, neither the ALJ nor the Appeals Council reversibly erred. So the court will **AFFIRM** the SSA's denial of benefits.

I.   **Statement of the Case**

   A.   **Bates's Disability, as told to the ALJ**

Bates was 33 years old at the time of the ALJ's decision. R. 20, 22. Bates went to high school through the 11th grade and then went back and got a GED. R. 147–48. Bates's past relevant work includes work as a glass glazer, amusement ride operator, automotive detailer, telemarketer, and fast food worker. R. 183, 338, 359.

At the ALJ hearing, Bates testified that he has type one diabetes and that about two or three times a week his blood sugar drops and he passes out. R. 153, 161. He also testified that he is normally "slightly depressed" and that he has bipolar disorder, which causes him to "cycle from deeply depressed to angry about the littlest, minute things in life that shouldn't really anger a person." R. 158. Bates's stepmother testified that he vomits several times per week and that his family rarely leaves him home alone because of concerns that Bates might have an episode with his blood sugar. R. 180–81.

Most days, Bates makes himself breakfast and then spends his mornings watching YouTube on his phone. R. 165. But if he is feeling well enough, Bates will go to the garage and work on a small project. R. 165. In the afternoons, Bates helps his sister with her homework. R. 165. Bates rarely drives and can only assist with

light chores around the house. R. 164, 181. But Bates does help get groceries in from the car, takes out the trash, and washes dishes. R. 163–64, 181.

### B. Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| | The 5-Step Test | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| | *Determine Residual Functional Capacity* | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine

a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### C. Bates's Application and the ALJ's Decision

The SSA reviews applications for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Bates applied for disability insurance benefits, a period of disability, and SSI in December 2017, claiming that he was unable to work because of various ailments, including diabetes mellitus, residual effects from a diabetic ulcer, plaque psoriasis, bipolar disorder, post-traumatic stress disorder, obsessive compulsive disorder, and cannabis use disorder. After receiving an initial denial in January 2018, Bates requested a hearing, which the ALJ conducted in February 2019. The ALJ ultimately issued an opinion denying Bates's claims in April 2019. R. 11–22.

At Step 1, the ALJ determined that Bates was not engaged in substantial gainful activity and thus his claims would progress to Step 2. R. 13.

At Step 2, the ALJ determined that Bates suffered from the following severe impairments: diabetes mellitus, residual effects of diabetic ulcer of the foot, plaque psoriasis, hypothyroidism, bipolar disorder, post-traumatic stress disorder, and obsessive-compulsive disorder. R. 13–14.

At Step 3, the ALJ found that none of Bates's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. R. 14–15. Thus, the ALJ next had to determine Bates's residual functional capacity.

The ALJ determined that Bates had the residual functional capacity to perform light work with these added limitations:

- Bates can only frequently push or pull with the right lower extremity;

- Bates can only occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds;

- Bates can only occasionally balance, stoop, kneel, crouch, or crawl;

- Bates can have only occasional exposure to vibration and no exposure to hazards such as work at unprotected heights, around dangerous moving machinery, or commercial driving;

- Bates can understand, remember, and carry out simple instructions and tasks for two-hour blocks of time;

- Bates can only tolerate occasional work-required interaction with coworkers or the public;

- Bates can tolerate changes in the workplace that are infrequent and gradually introduced;

- And Bates is expected to miss one day per month after successful completion of any probation or initial training period.

R. 16.

At Step 4, the ALJ found that Bates could perform his past relevant work as a fast food worker. R. 20. Alternatively, the ALJ went on to Step 5 and determined that Bates could perform jobs, such as assembler, hand packager, and laundry folder, that exist in significant numbers in the national economy. R. 21. Thus, the ALJ found that Bates was not disabled under the Social Security Act. R. 22.

### D.     The Appeals Council Decision

Bates requested an Appeals Council review of the ALJ's decision. R. 1–4. As part of his request for review, Bates submitted treatment records from AltaPointe Health, Quality of Life, and Coosa Valley Medical Center that he had not presented to the ALJ. The Appeals Council did not exhibit the AltaPointe Health records dated January 30, 2019 to April 1, 2019, the Quality of Life records, or the Coosa Valley Medical Center records, finding that "this evidence does not show a reasonable probability that it would change the outcome of the decision." R. 2. The Appeals Council did not exhibit AltaPointe Health records dated May 1, 2019, finding that this evidence did "not relate to the period at issue." R. 2. The Appeals Council then found no reason under the SSA's rules to review the ALJ's decision. So the ALJ's decision became the final decision of the SSA Commissioner.

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record

contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III. Legal Analysis

Bates makes four arguments for why the SSA erred in denying his application for benefits. The first challenges the ALJ's finding that Bates would miss work only one day per month. The second asserts that the ALJ's finding that Bates can perform past relevant work is not supported by substantial evidence. The third and fourth arguments relate to the Appeals Council's decision and work together: (a) the Appeals Council erred when it refused to consider Bates's treatment records from AltaPointe Health, Quality of Life, and Coosa Valley Medical Center; and, (b) once this "new evidence" is considered alongside the evidence presented to the ALJ, the decision to deny benefits is not supported by substantial evidence. The court addresses each argument in turn.

### A. Substantial evidence supports the ALJ's finding that Bates would miss only one day of work a month.

Bates's first argument centers on the ALJ's finding that he would miss only one day of work a month. The ALJ found that Bates would miss one day of work a month and that including this limitation in Bates's residual functional capacity would accommodate Bates's psychiatric impairments. Bates asserts that evidence of his mental health impairments and diabetic foot ulcer shows that he would miss more than one day of work a month, which the vocational expert testified would preclude all work.

In support of this argument, Bates points out that he received regular mental health treatment from December 2017 to December 2018. R. 761–848. And, during several of these appointments, a CRNP rated Bates's suicide severity rating as "high." R. 779, 783, 792. Bates also notes that he has a history of 12 suicide attempts. R. 768. Bates finally asserts that evidence that, despite being medication compliant, he had a diabetic foot ulcer that required a two-day hospital stay (R. 587–614) shows that his physical impairments would cause him to miss more than one day of work per month.

But, as the Commissioner points out, other evidence of Bates's mental and physical impairments supports the ALJ's finding that Bates wouldn't miss more than a day of work each month. For example, Dr. Kirstin Bailey, the state agency psychological consultant who reviewed Bates's file, stated that Bates's

psychological symptoms would likely cause him to miss one to two days per month. R. 218. And Bates's psychological symptoms appeared to improve after he started attending medication management and therapy sessions. For example, during Bates's initial medication management session in February 2018, Bates reported "racing thoughts, mood swings" and self-isolation. R. 828. And he noted that he had attempted suicide multiple times, most recently in 2013. R. 787. But in both April and June 2018, Bates reported that he was "stable on current medications." R. 774. Although in August 2018 Bates reported feeling suicidal and anxious, by December 2018, Bates's suicide severity rating was low, and he was "doing well on his medications." R. 774.

And, although Bates's foot ulcer was severe enough to require hospitalization in October 2017, his doctor described the foot ulcer as "improving" in December 2017. R. 632. By January 2018, the ulcer was "healing nicely." R. 674. And in July 2018, Bates's medical records stated that his ulcer took "5 months to completely heal," which suggests that the ulcer had healed by that time. R. 738.

It is not this court's role to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). And having reviewed Bates's treatment records, the court finds that a reasonable person could conclude, as the ALJ did, that Bates's mental and physical impairments wouldn't cause him to miss

9

more than one day of work per month. So substantial evidence supports the ALJ's finding that Bates would miss only one day of work a month. *See Crawford*, 363 F.3d at 1158.

**B.      Substantial evidence supports the ALJ's findings at Steps 4 and 5.**

Bates next argues that the ALJ erred by finding that he can perform his past relevant work as a fast food worker. Under Step 4, a claimant is not disabled if he can still perform his past relevant work. 20 CFR §§ 404.1520(a)(4)(iv), 426.920(a)(4)(iv). The burden is on the claimant to show that he can no longer perform his past relevant work as he performed it, or as it is generally performed in the national economy. *Jackson v. Bowen*, 801 F.2d 1291, 1293–94 (11th Cir. 1986). But when the record includes no evidence of the requirements, demands, or required duties of past work, the ALJ cannot properly determine whether the claimant has the residual functional capacity to perform past relevant work. *See Cannon v. Bowen*, 858 F.2d 1541, 1545–46 (11th Cir. 1988).

1. Past relevant work: At the ALJ hearing, the vocational expert consulted the Dictionary of Occupational Titles ("DOT") and testified that a hypothetical person with Bates's residual functional capacity could perform Bates's past work as a fast food worker, as generally performed. R. 183–85. Relying on this testimony and comparing Bates's residual functional capacity with the physical and mental

demands of the duties of a fast food worker as generally performed, the ALJ determined that Bates could perform his past work as a fast food worker. R. 20.

The SSA's regulations authorize ALJs to consult the DOT and consider the testimony of vocational experts to determine whether a claimant can perform his past relevant work. *See* 20 C.F.R. § 404.1560(b)(2). And Bates does not challenge the vocational expert's testimony that a hypothetical person with Bates's residual functional capacity could perform the duties of a fast food worker as it is performed in the general economy. Instead, Bates argues that the ALJ erred at Step 4 by failing to develop a record of the physical and mental demands of Bates's past work. But the ALJ's references to the DOT and the vocational expert's testimony establish that the ALJ adequately considered the duties of a fast food worker, as the job is performed in the general economy. *See Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 953 (11th Cir. 2010). And the ALJ made a factual finding that, based on the vocational expert's testimony, a person with Bates's residual functional capacity could perform the physical and mental demands of a fast food worker. R. 20. So Bates's argument that the ALJ did not properly assess the demands of his past work lacks merit.

Bates also argues that his uncontrolled diabetes would cause multiple absences from work that would prevent him from performing his past work as a fast food worker. There is some evidence in the record that Bates's diabetes may require

multiple absences from work per month. For example, both Bates and his stepmother testified at the ALJ hearing that Bates often has blood sugar episodes where he vomits and passes out. R. 161, 180–81.

But other evidence supports the ALJ's determination that Bates's diabetes would not cause excessive absenteeism. For example, Bates's treatment records suggest that Bates was making progress in managing his diabetes. In November 2017, Bates reported that his diabetes was getting worse, but in December 2017 and January 2018, Bates described his diabetes as improving. R. 623, 632, 707. And, although in February 2018 Bates stated that his diabetes was getting worse, in April 2018 Bates said his diabetes was stable. R. 714, 730. Because the record does not compel the conclusion that Bates's diabetes would cause him to miss work for more than one day per month, Bates's argument that his diabetes prevents him from performing his past work as a fast food worker fails.

2. <u>Hypothetical question to vocational expert</u>: Bates also asserts that the ALJ erred in relying on the vocational expert's testimony to find that he could perform his past relevant work because the hypothetical question posed to the vocational expert did not include all of Bates's limitations. According to Bates, the hypothetical question to the vocational expert was deficient because (1) it assumed that Bates would miss only one day of work a month, and (2) it did not account for Bates's mental impairments.

"[F]or a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel*, 631 F.3d at 1180 (quotations omitted). But if substantial evidence supports the ALJ's finding that the claimant does not have a particular limitation, the ALJ need not include that limitation in his hypothetical question to the vocational expert. *See Crawford*, 363 F.3d at 1161.

As discussed above, substantial evidence supports the ALJ's findings that Bates's impairments would cause him to miss only one day of work a month. So the ALJ did not have to ask the vocational expert to assume that Bates would miss two or more days of work a month.

And the hypothetical question posed to the vocational expert accounted for Bates's mental limitations. At Step 2, the ALJ found that Bates had moderate limitations in (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing himself. R. 15. As the ALJ noted, the hypothetical question accounted for Bates's limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace by stating that Bates can only understand, remember, and carry out simple instructions and tasks for two-hour blocks of time. R. 19. And the hypothetical question accommodated Bates's limitation in interacting with others by stating that Bates can only have occasional

interaction with coworkers and the public. R. 19–20. Finally, the hypothetical question accommodated Bates's limitation in adapting and managing himself by stating that Bates can only tolerate infrequent and gradually introduced workplace changes. R. 20. Because Bates has not argued that he has any other mental limitations not accounted for by the ALJ, the court finds that the ALJ properly relied on the vocational expert's response to his hypothetical question to determine that Bates could perform his past work as a fast food worker.

    3. <u>Other available work</u>: As an alternative to his finding in Step 4 that Bates could perform his past work as a fast food worker, the ALJ found in Step 5 that Bates could perform several other jobs that exist in significant numbers in the national economy. R. 21. Bates does not challenge this independent ground for the ALJ's determination that he is not disabled under the Social Security Act. So even if the ALJ erred at Step 4, the court would have to affirm the ALJ's finding that Bates was not disabled. *See Long v. Acting Comm'r of Soc. Sec. Admin.*, 749 F. App'x 932, 935 (11th Cir. 2018); *see also Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, . . . it follows that the judgment is due to be affirmed."). In any event, for the same reasons that substantial evidence supports the ALJ's reliance on the vocational expert's testimony at Step 4,

substantial evidence supports the ALJ's reliance on the vocational expert's testimony at Step 5. So the ALJ did not err in finding that Bates was not disabled.

### C. The Appeals Council did not reversibly err.

Bates finally argues that the Appeals Council erred by failing to consider the treatment notes he submitted to it. "Generally, a claimant may present evidence at each stage of the administrative process." *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308–09 (11th Cir. 2018). Although the Appeals Council can deny review, it must consider evidence presented after the ALJ's decision if it is new, material, and chronologically relevant. *See id.* at 1309. Bates asserts that the Appeals Council: (1) should have considered these treatment records because they were both material and chronologically relevant, and (2) failed to show in its written denial that it adequately evaluated his new evidence.

1. <u>Background</u>: After the ALJ issued his hearing decision, Bates's attorney submitted over 100 pages of medical records to the Appeals Council. R. 32–142. These medical records included treatment notes from a five-day March 2019 hospitalization resulting from complications related to Bates's diabetes. R. 32–104. They also included mental health treatment records from AltaPointe Health from January to May 2019. R. 105–26. Finally, these medical records included February 2019 treatment notes from Quality of Life that discuss Bates's diabetes. R. 127–42.

The Appeals Council did not exhibit the treatment records from Bates's hospitalization, Bates's AltaPointe Health records from January to April 2019, or Bates's Quality of Life treatment records, finding that "this evidence does not show a reasonable probability that it would change the outcome of the decision." R. 2. The Appeals Council did not exhibit May 1, 2019 treatment records from AltaPointe Health, finding that these records do "not relate to the period at issue." R. 2.

2. <u>Materiality determination</u>: Bates argues that the Appeals Council erred in finding that most of the evidence submitted to it was immaterial because the Appeals Council evaluated this evidence under a "reasonable probability" rather than a "reasonable possibility" standard. As Bates notes, the Eleventh Circuit has stated that new evidence is material if "there is a reasonable possibility that the new evidence would change the administrative outcome." *See Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). But the SSA's current regulations state that the Appeals Council will grant a request for review based on additional evidence only if the additional evidence is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).

The Appeals Council denied Bates's request for review well after the SSA's current regulations—which use the word "probability"—took effect in May 2017.

Bates cites no authority to support his argument that the new regulations do not apply to his claims, which were filed in December 2017 and reviewed by the Appeals Council in March 2020. So the court rejects Bates's argument that the Appeals Council had to apply a "reasonable possibility" standard when evaluating whether his new evidence would change the outcome of the ALJ's decision. *See Clark v. Soc. Sec. Comm'r*, --- F. App'x ---, 2021 WL 844711, at *3 (11th Cir. Mar. 8, 2021) (finding argument that Appeals Council had to apply reasonable possibility standard after new regulations took effect to lack merit).

As for the merits of the Appeals Council's materiality determination, Bates simply states that the Appeals Council's finding that the "submissions do not show a reasonable probability, or reasonable possibility that it would change the outcome of the decision . . . is not based on substantial evidence and is an error of law." *See* Doc. 10 at 30 (emphasis omitted). He does not point to any specific medical record that he contends would have changed the ALJ's decision. Nor does he explain what portions of the ALJ's opinion would have been different had the ALJ considered the treatment notes submitted to the Appeals Council. It is not this court's job to scour through the over 100 pages of treatment notes submitted to the Appeals Council to determine whether any of these medical records are material. And because Bates's briefs fail to explain how or why these treatment notes would have changed the outcome of the ALJ's decision, the court finds that Bates has abandoned the

argument that the Appeals Council erred in finding most of his new evidence immaterial. *See Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009).

3. Chronological relevance determination: Bates also challenges the Appeals Council's finding that the AltaPointe records from May 1, 2019 were not chronologically relevant. "New evidence is chronologically relevant if it relates to the period on or before the date of the [ALJ's] hearing decision." *Hargress*, 883 F.3d at 1309 (internal quotations and citations omitted). And here, the counseling session documented in the May 2019 treatment notes from AltaPointe occurred about one month after the ALJ issued his hearing decision. Plus, nothing within these treatment notes suggests that the counselor based the evaluation of Bates on his past medical records or on information from the relevant period. R. 113–14. So the court determines that the Appeals Council correctly found that these treatment notes were not chronologically relevant. *See Hargress*, 883 F.3d at 1309–10.

4. Evaluation of evidence: Bates finally argues that the Appeals Council did not adequately evaluate his new evidence because it "perfunctorily adhered" to the ALJ's decision. But when the Appeals Council denies a request for review, it is "not required to give a . . . detailed explanation or to address each piece of new evidence individually." *Id.* at 1309. Instead, it is sufficient for the Appeals Council to state, as it did here, that it rejected a claimant's new evidence because the evidence "does not relate to the period at issue" or the evidence "does not show a reasonable probability

that it would change the outcome of the decision." *See id.* So Bates's argument that the Appeals Council failed to show that it adequately evaluated his new evidence lacks merit.

\* \* \*

In summary, Bates has not shown that the Appeals Council had to consider the new evidence submitted to it when assessing his request for review. Because the Appeals Council did not have to consider these medical records, the court need not reach Bates's argument that once these treatment records are considered, the ALJ's decision is not supported by substantial evidence. *See id.* at 1310.

### IV. Conclusion

The ALJ applied the correct legal standards and substantial evidence supports the ALJ's decision, and the Appeals Council did not err in denying Bates's request for review. So the SSA's denial of benefits is due to be **AFFIRMED**. The court will enter a separate final order that closes this case.

**DONE** this March 25, 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE